T.C. Memo. 2004-280

UNITED STATES TAX COURT

DELAWARE CORP., ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 2040-02, 2041-02,        Filed December 16, 2004.
            2042-02.

<u>Harry L. Cohn</u>, for petitioners.

<u>Dustin M. Starbuck</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciencies in, and accuracy-related penalties under section

--------

[1]Cases of the following petitioners are consolidated here-
with:  Frances B. Havens (Ms. Havens), docket No. 2041-02; and
Oscar M. Barber (Mr. Barber), docket No. 2042-02.

6662(a)[2] on, each petitioner's Federal income tax (tax):

| Petitioner | Year | Deficiency | Accuracy-Related Penalty |
|---|---|---|---|
| Delaware Corporation | 1994 | $37,794 | $3,581.40 |
| | 1997 | 12,366 | 2,473.20 |
| Mr. Barber | 1994 | 6,710 | 1,342.00 |
| | 1995 | 495 | 99.00 |
| Ms. Havens | 1994 | 12,637 | 2,527.40 |
| | 1995 | 7,285 | 1,457.00 |

The issues remaining for decision in these consolidated cases are:[3]

(1) Do Delaware Corporation's payments during 1994 of certain expenses with respect to a farm in Caroline County, Virginia (Caroline County farm), constitute for that year constructive dividends to Ms. Havens that Delaware Corporation is not entitled to deduct?  We hold that they do.

(2) Do Delaware Corporation's payments during 1994 and 1995

---

[2]All section references are to the Internal Revenue Code (Code) in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[3]In addition to the issues remaining for decision listed below, there are other questions relating to certain determinations in the notice of deficiency (notice) issued to Ms. Havens (Ms. Havens's notice) with respect to her taxable years 1994 and 1995 that are computational in that their resolution flows automatically from our resolution of certain of the issues that we address herein.  Moreover, Delaware Corporation and respondent agree that the Court's resolution of certain of the issues remaining for decision will resolve whether Delaware Corporation is entitled to a net operating loss (NOL) deduction for 1997 that is attributable to a claimed NOL carryforward from 1995.

of certain expenses with respect to certain real property in Virginia Beach, Virginia (Virginia Beach property), constitute for those years constructive dividends to Ms. Havens that Delaware Corporation is not entitled to deduct? We hold that they do.

(3) Is Delaware Corporation entitled for 1994 and 1995 to depreciation deductions with respect to the Virginia Beach property? We hold that it is not.

(4) Do Delaware Corporation's payments during 1994 of certain legal fees constitute for that year constructive dividends to Mr. Barber that Delaware Corporation is not entitled to deduct? We hold that they do.

(5) Do Delaware Corporation's payments during 1994 and 1995 of certain child care expenses constitute for those years constructive dividends to Mr. Barber that Delaware Corporation is not entitled to deduct? We hold that they do.

(6) Is Delaware Corporation liable for each of the years 1994 and 1997 for the accuracy-related penalty under section 6662(a)? We hold that it is.

(7) Is Mr. Barber liable for each of the years 1994 and 1995 for the accuracy-related penalty under section 6662(a)? We hold that he is.

(8) Is Ms. Havens liable for each of the years 1994 and 1995 for the accuracy-related penalty under section 6662(a)? We hold

that she is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time it filed its petition, the principal place of business of Delaware Corporation was in Virginia.  Mr. Barber and Ms. Havens resided in Virginia at the time they filed their respective petitions.

Background

At all relevant times, Delaware Corporation was a commercial and industrial construction company.  Prior to August 1, 1993, Mr. Barber owned 100 percent of the stock of Delaware Corporation.  During 1994 and 1995, Delaware Corporation did not have a written employee benefits plan.  During at least part of 1994 and 1995, Mr. Barber's two daughters (Mr. Barber's daughters) worked for Delaware Corporation, although not at the same time.

Some time prior to June 2, 1992, Mr. Barber was convicted of marijuana conspiracy for which he was incarcerated.  Before Mr. Barber's incarceration, he and his then wife Laura Barber (Ms. Barber) resided on property located in Middlesex County, Virginia (Mitchums Creek property), which they owned as joint tenants. After Mr. Barber's release from prison on June 2, 1992, he did not return to live at the Mitchums Creek property, where Ms. Barber continued to reside.

A few years before Mr. Barber's release from prison, he

applied to a bank for a loan and offered to use the Mitchums Creek property as collateral. As a condition to approving that loan application while Mr. Barber was in prison, the bank requested Mr. Barber to sign a deed (Mitchums Creek deed) conveying to Ms. Barber his interest as a joint tenant in the Mitchums Creek property, which he did. Mr. Barber gave the Mitchums Creek deed to Ms. Barber but did not intend that she record that deed unless and until he defaulted on his loan payments.

While Mr. Barber was incarcerated, he and Ms. Barber divorced. Thereafter, but while Mr. Barber was still in prison, Ms. Barber recorded the Mitchums Creek deed. It was not until after his release from prison that Mr. Barber discovered that Ms. Barber had recorded that deed, whereupon he commenced litigation (litigation with respect to the Mitchums Creek property) against her in the Circuit Court of Middlesex County (Middlesex Circuit Court). In that litigation, Mr. Barber claimed that he and Ms. Barber as joint tenants, and not Ms. Barber alone, owned the Mitchums Creek property. Some time after August 1, 1993, the Middlesex Circuit Court found that Ms. Barber had fraudulently induced Mr. Barber to convey to her his interest in the Mitchums Creek property. That court ordered a rescission of the Mitchums Creek deed and a so-called equitable distribution of the Mitchums Creek property to both Mr. Barber and Ms. Barber.

In January 1988, Ms. Havens purchased for $300,000 the

Virginia Beach property on which was situated a colonial-style, brick, 2,900 square-foot house. That house had four bedrooms, three full baths, a detached two-car garage, and an in-ground swimming pool. At all relevant times, including during 1993, 1994, and 1995, Ms. Havens resided at the Virginia Beach property. At some time prior to August 1, 1993, Ms. Havens purchased the Caroline County farm.

Some time between June 3, 1992, and August 1, 1993, Mr. Barber met Ms. Havens at a social gathering. At that gathering, Mr. Barber learned from Ms. Havens that she owned 60 percent of the stock of a very successful corporation known as Management Systems Applications, Inc. (MSA), and that MSA's subsidiary Management Systems Applications, Inc. Kuwait, LLC (MSA-Kuwait), was having certain problems while conducting its business in Kuwait. Mr. Barber offered to assist Ms. Havens in resolving those problems. Although wary of Mr. Barber because he had recently been released from prison, Ms. Havens accepted Mr. Barber's offer and caused MSA-Kuwait to hire Mr. Barber. Mr. Barber's work with MSA-Kuwait lasted approximately one year, during which time he traveled to Kuwait several times.

At a time not disclosed by the record after June 2, 1992, and before August 1, 1993, Ms. Havens and Mr. Barber formed and owned Marion-Booker (Marion-Booker), a Virginia limited liability company. Marion-Booker purchased certain real property (Chick

Cove property) at Chick Cove Manor in Middlesex County, Virginia, which it intended to sell after it caused a house to be built thereon.

During 1993, 1994, and 1995, Mr. Barber stayed at various times at the Virginia Beach property, at the Chick Cove property, and at a house located in Topping, Virginia.

## Certain Transactions Involving Delaware Corporation, Ms. Havens, and Mr. Barber

At least during the period June 2, 1992, to August 1, 1993, Delaware Corporation did not have the assets or capitalization that Mr. Barber believed was necessary to secure the financing and the bonding that it required in order to bid successfully on major construction projects. During that period, Ms. Havens and Mr. Barber discussed between themselves and with Robert L. Braun (Mr. Braun)[4] the use by Delaware Corporation of certain of Ms. Havens's assets and certain of Mr. Barber's assets for the purpose of enhancing Delaware Corporation's ability to secure such financing and such bonding (Ms. Havens's and Mr. Barber's plan).

Mr. Braun recommended that Delaware Corporation, Ms. Havens, and Mr. Barber use a so-called contract of purchase, and not a deed of trust, in order to effect Ms. Havens's and Mr. Barber's

_____

[4]Mr. Braun is a certified public accountant who since 1978 provided various professional services to Delaware Corporation and Mr. Barber.

plan. In recommending the use of a contract of purchase, Mr. Braun advised Delaware Corporation, Ms. Havens, and Mr. Barber that such a contract (1) would not trigger the due-on-sale clause in favor of the first mortgage holder of any mortgage loan with respect to any property that they wished to use to carry out Ms. Havens's and Mr. Barber's plan and (2) would be reflected in Delaware Corporation's financial statements as a stockholder loan that would be treated as equity for purposes of that company's ability to obtain bonding. Mr. Braun also advised Delaware Corporation, Ms. Havens, and Mr. Barber that no recording costs would have to be paid if a contract of purchase were used since under such a contract no deed would be recorded. In addition, based on information provided to him, Mr. Braun advised petitioners that the respective properties of Ms. Havens and Mr. Barber that they intended to use in effecting Ms. Havens's and Mr. Barber's plan were rental properties and that Delaware Corporation would be entitled to deduct the operating expenses relating to any such rental property provided that the rent was paid for such property.

Some time shortly before August 1, 1993, Delaware Corporation, Ms. Havens, and Mr. Barber caused contracts of purchase to be prepared in order to implement Ms. Havens's and Mr. Barber's plan, and Mr. Braun reviewed those contracts.

Delaware Corporation, Ms. Havens, and Mr. Barber entered

into an agreement (1993 global agreement), effective as of August 1, 1993, which provided in pertinent part:

> THIS AGREEMENT, made as of and effective this 1st day of August, 1993, by and between FRANCES B. HAVENS ("Havens"), and OSCAR M. BARBER ("Barber"), and DELA-WARE CORPORATION ("DC"),
>
> STATEMENTS:
>
> A. Barber is 100% owner of all of the stock of DC.
>
> B. Havens is the owner of property known as 1316 Harris Road, Virginia Beach, Virginia, (the "Virginia Beach property) and 185 acres, Reedy Church District, Caroline County, Virginia (the "Caroline County property").
>
> C. Havens and Barber are the owners of Marion-Booker, a Virginia limited liability company, which owns a lot with improvements thereon at Chick Cove Manor, Middlesex County, Virginia.
>
> D. Barber has and/or is asserting an ownership interest in property on Mitchum's Creek in Middlesex County, Virginia.
>
> E. Havens is a 60% owner of Management Systems Applications, Inc., a Virginia corporation.
>
> F. Havens owns a 30% interest in MSA-Kuwait, LLC [MSA-Kuwait] a Virginia limited liability company and DC owns a 30% interest in MSA-Kuwait, LLC.
>
> G. The parties have agreed and desire that the Caroline County property, the Virginia Beach property, the interest in MSA-Kuwait owned by Havens and the Mitchum Creek property, and the Marion-Booker property be transferred to DC, for DC to enter into a management contract with Management Systems Applications, Inc. ("MSA") and for Havens to acquire a stock ownership in DC as set forth below:
>
> WITNESSETH:
>
> NOW, THEREFORE IN CONSIDERATION of $10.00 cash in

hand paid by DC to Havens and to Barber and the receipt of which is hereby acknowledged and for other good and valuable considerations including the mutual promises contained herein the parties agree as follows:

1. The Caroline County property will be transferred to DC for consideration of $715,000.00, which includes the assumption by DC of the existing indebtedness in favor of Colonial Farm Credit ACA [in] the approximate amount of $394,800.00. This transfer will be by way of a land sales contract. The difference between the present indebtedness of $394,800.00 and $715,000.00 will be evidenced by a promissory note payable to Havens bearing interest at the lowest rate allowed by law to prevent the imputation of interest. Such note shall be due and payable upon the sale of the Caroline County property. If the parties terminate this agreement or at DC's option if the management contract referred to herein is not renewed, DC will convey its interest in the property back to Havens, the aforesaid note shall be cancelled and DC will be relieved from any further obligations for payment under the indebtedness to Colonial Farm Credit ACA. Any moneys spent by DC for maintenance or for interest on the indebtedness will be at DC's expense not to be reimbursed to DC if the Caroline property is reconveyed to Havens.

2. The Virginia Beach property will be transferred to DC for consideration of $300,000.00, which includes the assumption by DC of the existing indebtedness in favor of Crestar Mortgage Corp. [in] the approximate amount of $172,000.00. This transfer will be by way of a land sales contract. The difference between the present indebtedness of $172,000.00 and $300,000.00 will be evidenced by a promissory note payable to Havens bearing interest at the lowest interest rate allowed by law to prevent the imputation of interest. Such note shall be due and payable upon the sale of the Virginia Beach property. If the parties terminate this agreement or at DC's option if the management contract referred to herein is not renewed, DC will convey its interest in the property back to Havens, the aforesaid note shall be cancelled and DC will be relieved from any further obligations for payment under the indebtedness to Nations

Bank. Any moneys spent by DC for maintenance or for interest on the indebtedness will be at DC's expense not to be reimbursed to DC if the Virginia Beach property is reconveyed to Havens.

3. Havens will transfer to DC a 30% interest in MSAK. If a dispute arises, the operating agreement dated August 1, 1993 will prevail. If the parties terminate this agreement or at the option of DC if the management agreement is not renewed, the 30% interest in MSAK will revert to Havens without regard to increase in value. Provided, however, DC will be entitled to keep its 30%.

4. Barber will convey his interest in the Mitchum's Creek property to DC by land sales contract for $50,000.00 plus the payment of debts to Rumsey, Breeden, Hubbard, Bugg & Terry and to Braun, Dehnert, Clarke & Co. DC will pay all expenses in recovering the house and anything that has to be paid to Laura Barber. The deed of Barber's interest will be delivered to DC at the earliest time he is able to convey such interest.

5. Havens will cause MSA to enter into a management agreement with DC on the terms and conditions set forth in that management agreement dated August 1, 1993 which is made a part hereof by this reference.

6. Upon execution and delivery of all of the documents enumerated herein to DC, DC will issue to Havens sufficient stock so that after the issuance 51% of DC will be owned by Barber and 49% will be owned by Havens. Notwithstanding this stock ownership percentages, all profit and loss distributions and capital distributions will be split 50-50. Also notwithstanding anything contained herein to the contrary, with regard to matters involving MSA, Havens will have the right to direct same, such not to be overridden by Barber.

7. Should this agreement be terminated by the mutual agreement of the parties, or should DC elect to terminate this agreement because of the management contract not being renewed, generally except as otherwise regarded herein, the parties agree to take all actions necessary to place themself in a

position that they were in immediately prior to the effective date of this agreement. For purposes of illustration the Caroline property, the Virginia Beach property, half of the MSAK interest would be returned to Havens. The Mitchums Creek property would be split 50-50. In the event of such termination or dissolution, the parties agree that total assets of DC will be assigned a fair market value, with Havens being entitled to 50% of the total fair market value and Barber entitled to 50% of the total fair market value; provided, however, Havens shall be entitled to receive as part of her 50% share, the equities accumulated in the aforementioned properties. In the event of termination or dissolution, Havens agrees to convey all of her right, title and interest in DC back to DC or to Barber. [Reproduced literally.]

Pursuant to the 1993 global agreement, Delaware Corporation and MSA entered into a management contract (1993 management contract). The 1993 management contract, which was effective as of August 1, 1993, provided in pertinent part as follows:

THIS MANAGEMENT CONTRACT [is] made and effective as of August 1, 1993, between The Delaware Corporation * * * ("DC") and Management Systems Applications, Inc. * * * ("MSA").

STATEMENTS:

\* \* \* \* \* \* \*

C. MSA desires to enter into a Management contract with DC for DC to supply management services to MSA.

\* \* \* \* \* \* \*

1.  DURATION AND CANCELLATION

     The initial term of this contract shall be for one (1) year; beginning on the effective date of this contract and ending at 12:00 midnight on July 31, 1994. After the expiration of the initial term, this agreement will continue in effect on a year to year basis on the saine [sic] terms and conditions until canceled by either party. * * *

     *       *       *       *       *       *       *

9.  MANAGEMENT FEES

     A.   In return for the management services provided by DC to MSA under this contract, MSA shall negotiate the fees for each contract function assigned to DC.

     B.   As an incentive under this Agreement, in addition to the fees under Paragraph A above, DC shall be paid an amount equal to 5% of the pre-tax profits of MSA resulting from or because of management improvements by DC, for each calender year. * * *

Pursuant to paragraph 9(A) of the 1993 management contract, MSA paid Delaware Corporation $30,000 per month for a period not disclosed by the record.

Pursuant to the 1993 global agreement, Ms. Havens entered into a contract of purchase that purported to sell to Delaware Corporation the Caroline County farm (Caroline County farm contract).  The Caroline County farm contract, which was effective as of August 1, 1993, provided in pertinent part:

     THIS CONTRACT OF PURCHASE, entered into as of the 1st day of August, 1993, by and between FRANCES B. HAVENS (hereinafter referred to as "Seller") and DELAWARE CORPORATION (hereinafter referred to as "Purchaser").

STATEMENTS:

A.    The Seller agrees to sell and the Purchaser agrees to buy the property described on Exhibit A attached hereto and made a part hereof by this reference (the "Caroline County property") upon certain terms and conditions contained therein; and

B.    The parties hereto have agreed that such sale and purchase be by contract and that the deed of conveyance be delivered when such contract has been completed in full.

        *        *        *        *        *        *        *

2.    <u>The Property and Restrictions</u>.    The Purchaser agrees to purchase and the Sellers [sic] agree to sell the property described in Exhibit A.

3.    <u>Purchase Price and Terms of Payment</u>.    The price of the property shall be $715,000.00 with the present indebtedness being assumed by the Purchaser and the balance evidenced by a promissory note payable by the Purchaser upon the sale of such parcel.

The Purchaser agrees that the unpaid balance shall bear interest at the lowest rate allowed by law to prevent the imputation of interest per annum from the date hereof, such interest to be payable annually.  Any payments are to be applied first to the payment of interest on any unpaid balances of the purchase price and second to the reduction of the principal amount of the purchase price.

Until the sale of the parcel, Delaware Corp. shall be responsible for payment of all indebtedness which constitute[s] a lien against the parcel.

4.    <u>Deed Upon Full Payment</u>.    Upon the entire balance of the purchase price of the parcel being paid in full, the Purchaser shall be entitled to receive a deed for that parcel * * *.

        *        *        *        *        *        *        *

8.    <u>Risk of Loss</u>.    From the date hereof, risk of loss or damage to the properties by fire, windstorm, casualty or other cause is assumed by the Purchaser.

9. <u>Insurance</u>. Purchaser is to procure and carry at Purchaser's expense fire and casualty insurance on improvements to the property in an amount not less than the replacement value with such policies naming Seller as first loss payee and Purchaser as second loss payee. Purchaser shall also procure and carry out at its expense liability insurance in favor of the Seller affording protection to the limit of $500,000.00 in respect to injury or death to a single person and to the limit of $500,000.00 in respect of any one accident. Purchaser shall provide the Seller with a copy of such policies and agree to maintain same during the term of this contract.

    *       *       *       *       *       *       *

12. <u>Possession of Property</u>. The Purchaser may enter into possession of such property as of August 1, 1993, and continue in such possession for and during the life of this agreement. The Purchaser shall maintain such premises and all improvements thereon in good repair, shall permit no waste thereof, and shall take the same care thereof that a prudent owner would take. During the life of this agreement Purchaser may not improve such property without the Seller's consent in writing. * * *

13. <u>Assignment</u>. No transfer or assignment of any rights hereunder shall be made by anyone having an interest herein, unless made in writing and in such manner and on such terms and conditions required by the Seller.

    *       *       *       *       *       *       *

16. <u>Loans</u>. Notwithstanding anything contained herein to the contrary, the Purchaser may mortgage the property to pay off the purchase price, with the consent of Seller.

    *       *       *       *       *       *       *

20. <u>Construction</u>. This agreement shall be interpreted under the laws of the Commonwealth of Virginia and shall not be construed against either party as drafter.

Pursuant to the Caroline County farm contract, Delaware

Corporation assumed the balance of Ms. Havens's $394,800 mortgage loan with respect to the Caroline County farm and gave Ms. Havens a promissory note (Caroline County farm note) for the remaining $320,200 of the $715,000 purchase price set forth in that contract. The Caroline County farm note provided in pertinent part:

> Delaware Corporation, a Virginia corporation, promises to pay to the order of Frances B. Havens * * * the sum of $320,200 due and payable upon the sale of the property at Reedy Church District, Caroline County, Virginia * * *.
>
> This note bears interest at the lowest rate of interest per annum allowed by law from time to time to prevent the imputation of interest. * * *

At all relevant times after July 31, 1993, the Caroline County farm remained unsold, and Delaware Corporation did not make any payments to Ms. Havens on the Caroline County farm note.

Pursuant to the 1993 global agreement, Ms. Havens entered into a contract for purchase that purported to sell to Delaware Corporation the Virginia Beach property (Virginia Beach property contract). The Virginia Beach property contract, which was effective as of August 1, 1993, provided in pertinent part:

> THIS CONTRACT OF PURCHASE, entered into as of the 1st day of August, 1993, by and between FRANCES B. HAVENS (hereinafter referred to as "Seller") and DELAWARE CORPORATION (hereinafter referred to as "Purchaser").
>
> STATEMENTS:
>
> A. The Seller agrees to sell and the Purchaser agrees to buy the property described on Exhibit A attached hereto and made a part hereof by this reference (the "Virginia Beach property") upon certain terms

and conditions contained therein; and

B.    The parties hereto have agreed that such sale and purchase be by contract and that the deed of conveyance be delivered when such contract has been completed in full.

*        *        *        *        *        *        *

2.    The Property and Restrictions.    The Purchaser agrees to purchase and the Sellers [sic] agree to sell the property described in Exhibit A.

3.    Purchase Price and Terms of Payment.    The price of the property shall be $300,000.00 with the present indebtedness being assumed by the Purchaser and the balance evidenced by a promissory note payable by the Purchaser upon the sale of such parcel.

The Purchaser agrees that the unpaid balance shall bear interest at the lowest rate allowed by law to prevent the imputation of interest per annum from the date hereof, such interest to be payable annually.  Any payments are to be applied first to the payment of interest on any unpaid balances of the purchase price and second to the reduction of the principal amount of the purchase price.

Until the sale of the parcel, Delaware Corp. shall be responsible for payment of all indebtedness which constitute[s] a lien against the parcel.

4.    Deed Upon Full Payment.    Upon the entire balance of the purchase price of the parcel being paid in full, the Purchaser shall be entitled to receive a deed for that parcel * * *.

*        *        *        *        *        *        *

8.    Risk of Loss.    From the date hereof, risk of loss or damage to the properties by fire, windstorm, casualty or other cause is assumed by the Purchaser.

9.    Insurance.    Purchaser is to procure and carry at Purchaser's expense fire and casualty insurance on improvements to the property in an amount not less than the replacement value with such policies naming Seller as first loss payee and Purchaser as

second loss payee.  Purchaser shall also procure and carry out at its expense liability insurance in favor of the Seller affording protection to the limit of $500,000.00 in respect to injury or death to a single person and to the limit of $500,000.00 in respect of any one accident.  Purchaser shall provide the Seller with a copy of such policies and agree to maintain same during the term of this contract.

     *       *       *       *       *       *       *

12.  Possession of Property.  The Purchaser may enter into possession of such property as of August 1, 1993, and continue in such possession for and during the life of this agreement.  The Purchaser shall maintain such premises and all improvements thereon in good repair, shall permit no waste thereof, and shall take the same care thereof that a prudent owner would take. During the life of this agreement Purchaser may not improve such property without the Seller's consent in writing. * * *

13.  Assignment.   No transfer or assignment of any rights hereunder shall be made by anyone having an interest herein, unless made in writing and in such manner and on such terms and conditions required by the Seller.

     *       *       *       *       *       *       *

16.  Loans.   Notwithstanding anything contained herein to the contrary, the Purchaser may mortgage the property to pay off the purchase price, with the consent of Seller.

     *       *       *       *       *       *       *

20.  Construction.   This agreement shall be interpreted under the laws of the Commonwealth of Virginia and shall not be construed against either party as drafter.

Pursuant to the Virginia Beach property contract, Delaware Corporation assumed the balance of Ms. Havens's $172,000 mortgage loan with respect to the Virginia Beach property and gave Ms.

Havens a promissory note (Virginia Beach property note) for the remaining $128,000 of the $300,000 purchase price set forth in that contract.  The Virginia Beach property note provided in pertinent part:

> Delaware Corporation, a Virginia corporation, promises to pay to the order of Frances B. Havens * * * the sum of $128,000.00 due and payable upon the sale of the * * * [Virginia Beach property].
>
> This note bears interest at the lowest rate of interest per annum allowed by law from time to time to prevent the imputation of interest. * * *

At all relevant times after July 31, 1993, the Virginia Beach property remained unsold, and Delaware Corporation did not make any payments to Ms. Havens on the Virginia Beach note.

Pursuant to the 1993 global agreement, Delaware Corporation and Mr. Barber entered into a contract of purchase (Mitchums Creek contract) that purported to sell to Delaware Corporation his interest in the Mitchums Creek property.  The Mitchums Creek contract, which was effective as of August 1, 1993, while the litigation with respect to the Mitchums Creek property was pending in the Middlesex Circuit Court, provided in pertinent part:

> THIS CONTRACT OF PURCHASE, entered into as of the 1st day of August, 1993, by and between OSCAR M. BARBER (hereinafter referred to as "Seller") and DELAWARE CORPORATION (hereinafter referred to as "Purchaser").
>
> STATEMENTS:
>
> A.   The Seller agrees to sell and the Purchaser agrees to buy the property described on Exhibit A

attached hereto and made a part hereof by this refer-
ence (the "Middlesex County property") [Mitchums Creek]
upon certain terms and conditions contained therein;
and

    B.   The parties hereto have agreed that such sale
and purchase be by contract and that the deed of con-
veyance be delivered when such contract has been com-
pleted in full.

    *      *      *      *      *      *      *

    2.   <u>The Property and Restrictions</u>.  The Pur-
chaser agrees to purchase and the Sellers [sic] agree
to sell all of the Seller's right, title and interest
in and to the property described in Exhibit A.

    3.   <u>Purchase Price and Terms of Payment</u>.  The
price of the property shall be $50,000.00 with the
present indebtedness being assumed by the Purchaser
together with all legal and accounting fees with the
balance evidenced by a promissory note payable by the
Purchaser upon the sale of such parcel.

    The Purchaser agrees that the unpaid balance shall
bear interest at the lowest rate allowed by law to
prevent the imputation of interest per annum from the
date hereof, such interest to be payable annually.  Any
payments are to be applied first to the payment of
interest on any unpaid balances of the purchase price
and second to the reduction of the principal amount of
the purchase price.

    Until the sale of the parcel, Delaware Corp. shall
be responsible for payment of all indebtedness which
constitute[s] a lien against the parcel.

    4.   <u>Deed Upon Full Payment</u>.  Upon the entire
balance of the purchase price of the parcel being paid
in full, the Purchaser shall be entitled to receive a
deed for that parcel * * *.

    *      *      *      *      *      *      *

    8.   <u>Risk of Loss</u>.  From the date hereof, risk of
loss or damage to the properties by fire, windstorm,
casualty or other cause is assumed by the Purchaser.

9. <u>Insurance</u>. Purchaser is to procure and carry at Purchaser's expense fire and casualty insurance on improvements to the property in an amount not less than the replacement value with such policies naming Seller as first loss payee and Purchaser as second loss payee. Purchaser shall also procure and carry out at its expense liability insurance in favor of the Seller affording protection to the limit of $500,000.00 * * *. Purchaser shall provide the Seller with a copy of such policies and agree to maintain same during the term of this contract.

    *       *       *       *       *       *       *

12. <u>Possession of Property</u>. The Purchaser may enter into possession of such property as of August 1, 1993, and continue in such possession for and during the life of this agreement. The Purchaser shall maintain such premises and all improvements thereon in good repair, shall permit no waste thereof, and shall take the same care thereof that a prudent owner would take. During the life of this agreement Purchaser may not improve such property without the Seller's consent in writing. * * *

13. <u>Assignment</u>. No transfer or assignment of any rights hereunder shall be made by anyone having an interest herein, unless made in writing and in such manner and on such terms and conditions required by the Seller.

    *       *       *       *       *       *       *

16. <u>Loans</u>. Notwithstanding anything contained herein to the contrary, the Purchaser may mortgage the property to pay off the purchase price, with the consent of Seller.

    *       *       *       *       *       *       *

20. <u>Construction</u>. This agreement shall be interpreted under the laws of the Commonwealth of Virginia and shall not be construed against either party as drafter.

As made clear in paragraph 4 of the 1993 global agreement, the term "present indebtedness" referred to in paragraph 3 of the

Mitchums Creek contract included, inter alia, any mortgage
indebtedness outstanding on the Mitchums Creek property and any
legal fees that Mr. Barber owed as of the effective date of the
Mitchums Creek contract for services rendered in connection with
the litigation with respect to the Mitchums Creek property.

Pursuant to the Mitchums Creek contract, Delaware Corpora-
tion gave Mr. Barber a promissory note for $50,000.  That promis-
sory note provided in pertinent part:

> Delaware Corporation, a Virginia corporation, promises
> to pay to the order of Oscar M. Barber * * * the sum of
> $50,000.00 due and payable upon the sale of the prop-
> erty at Mitchums Creek Property, Middlesex County,
> Virginia * * *.
>
> This note bears interest at the lowest rate of
> interest per annum allowed by law from time to time to
> prevent the imputation of interest. * * *

Pursuant to the 1993 global agreement, Marion-Booker[5] en-
tered into a contract with Delaware Corporation under which
Marion-Booker purported to sell to Delaware Corporation its
interest in the Chick Cove property.  Although, as discussed
above, Mr. Barber stayed at the Chick Cove property at various
times during the period 1993 through 1995, he did not pay rent to
Delaware Corporation during that period for his use of that
property.

At a time not disclosed by the record after the respective

---

[5]As discussed above, Marion-Booker was a Virginia limited
liability company that Ms. Havens and Mr. Barber formed and
owned.

effective dates of the Caroline County farm contract and the Virginia Beach property contract, Delaware Corporation completed several major construction projects for which it had been able to obtain the financing and the bonding that permitted it to bid successfully on such projects.

At all relevant times, including the respective effective dates of the Caroline County farm contract and the Virginia Beach property contract and all relevant times thereafter during the taxable years in question,[6] petitioners did not intend that Ms. Havens transfer to Delaware Corporation equitable ownership of and legal title to the Caroline County farm and the Virginia Beach property. Thus, Delaware Corporation assigned its interest in the Caroline County farm contract (Caroline County farm assignment) to MSG-STG L.P., a family limited partnership controlled by Ms. Havens. The Caroline County farm assignment, which was effective as of November 9, 1994, provided in pertinent part as follows:

> THIS ASSIGNMENT of Contract Interest, made November 9, 1994, by and between DELAWARE CORPORATION, a Virginia Corporation (Assignor), and MSG-STG L.P., a Virginia Limited Partnership (Assignee).

---

[6]The taxable years for which respondent determined deficiencies and penalties against Ms. Havens and Mr. Barber are 1994 and 1995. The taxable years for which respondent determined deficiencies and penalties against Delaware Corporation are 1994 and 1997. The deficiency and the penalty that respondent determined for Delaware Corporation's taxable year 1997 are attributable to respondent's disallowance of a claimed NOL carryforward from its taxable year 1995.

\*       \*       \*       \*       \*       \*       \*

WHEREAS, the parties to this Assignment wish to assign to MSG-STG L.P., a Virginia Limited Partnership, all rights of DELAWARE CORPORATION in and to the August 1, 1993 contract of purchase, to cancel the August 1, 1993 Note in the amount of Three Hundred Twenty Thousand Two Hundred and NO/100 Dollars ($320,200.00), and to relinquish any and all claims so that DELAWARE CORPORATION shall not have any equitable claim under color of title to the property located in Caroline County, Virginia, purchased by Frances B. HAVENS in 1991, and the legal title to which is still vested in the name of Frances B. HAVENS under the Court record documents in Caroline County, Virginia and

WHEREAS, the parties wish the Assignment to allow Frances B. HAVENS to freely transfer and/or convey or sell her ownership in the One Hundred Eighty-five (185) acres, more or less, located in Caroline County, Virginia, free and clear of any claims of interest or ownership by DELAWARE CORPORATION under the August 1, 1993 contract of purchase.

NOW, THEREFORE, in consideration of the sum of Ten and NO/100 Dollars ($10.00) paid by MSG-STG L.P., a Virginia Limited Partnership, to DELAWARE CORPORATION, receipt of which is hereby acknowledged, and other good and valuable considerations, the parties hereto agree as follows:

1. DELAWARE CORPORATION assigns to MSG-STG L.P., a Virginia Limited Partnership, all of its legal and equitable rights in and to the contract of purchase dated August 1, 1993, by and between Frances B. HAVENS and DELAWARE CORPORATION for the Caroline County property, reference to which contract is hereby expressly made and which contract is incorporated into this agreement.

2. DELAWARE CORPORATION assigns all claims which it may have, legal or equitable, under any contract or color of title, to any interest in the One Hundred Eighty-five (185) acres, more or less, located in Caroline County, Virginia.

3. The August 1, 1993 Note from DELAWARE CORPORATION payable to Frances B. HAVENS in the amount of

Three Hundred Twenty Thousand Two Hundred and NO/100 Dollars ($320,200.00) is cancelled effective upon the date of this agreement.

4. This Assignment and release of contractual rights and claim under any color of title shall not be recorded.

Delaware Corporation also assigned its interest in the Virginia Beach property contract (Virginia Beach assignment) to Ms. Havens. The Virginia Beach assignment, which was effective as of June 1, 1995, provided in pertinent part:

**THIS ASSIGNMENT** of Contract Interest, made June 1, 1995 by and between **DELAWARE CORPORATION**, a Virginia Corporation (Assignor), and **Frances B. Havens** (Assignee).

\*      \*      \*      \*      \*      \*      \*

**WHEREAS**, the parties to this Assignment wish to re-assign to **Frances Havens** all rights of **DELAWARE CORPORATION** in and to the August 1, 1993 contract of purchase, to cancel the August 1, 1993 Note in the amount of **One Hundred Twenty Eight Thousand and No/100 Dollars ($128,000.00)**, and to relinquish any and all claims so that **DELAWARE CORPORATION** shall not have any equitable claim of title to the property located in Virginia Beach, Virginia, purchased by Frances B. Havens in January 1988, and the legal title to which is still vested in the name of Frances B. HAVENS under the Court record documents in Virginia Beach, Virginia and

**WHEREAS**, the parties wish the Assignment to allow Frances B. **HAVENS** to freely transfer and/or convey or sell her ownership in the House and Real Estate, located in Virginia Beach, Virginia free and clear of any claims of interest or ownership by **DELAWARE CORPORATION** under the August 1, 1993 contract of purchase.

**NOW, THEREFORE**, in consideration of the sum of Ten and NO/100 Dollars ($10.00) paid by **Frances Havens**, to **DELAWARE CORPORATION**, receipt of which is hereby acknowledged, and other good and valuable considerations,

the parties hereto agree as follows:

1.   **DELAWARE CORPORATION** assigns to **Frances Havens**, all of its legal and equitable rights in and to the contract of purchase dated August 1, 1993, by and between Frances B. **HAVENS** and **DELAWARE CORPORATION** for the Virginia Beach property, reference to which contract is hereby expressly made and which contract is incorporated into this agreement.

2.   **DELAWARE CORPORATION** assigns all claims which it may have, legal or equitable, under any contract or color of title, to any interest in the House and Realestate [sic] located in Virginia Beach, Virginia.

3.   The August 1, 1993 Note from **DELAWARE CORPORATION** payable to Frances B. **HAVENS** in the amount of One Hundred Twenty Eight Thousand and NO/100 Dollars ($128,000.00) is cancelled effective upon the date of this agreement.

4.   Frances Havens will re-assume the liability of the pay off balance to Crestar Mortgage Corporation in the amount of One Hundred Fifty Nine Thousand Nine Hundred Forty Five and 94/100 Dollars ($159,945.94) and commence making the monthly payments.

5.   Delaware Corporation will deduct from Frances Havens Loan from Stockholder account Twelve Thousand Fifty Four and 06/100 Dollars ($12,054.06), which represents Delaware Corporation's Equitable interest in the Virginia Beach Property.

6.   This Assignment and release of contractual rights and claim under any color of title shall not be recorded.

Some time after the conclusion of the litigation with respect to the Mitchums Creek property, Ms. Barber purchased for $75,000 the one-half of that property that the Middlesex Circuit Court had found she did not own and that Mr. Barber had purported to sell to Delaware Corporation pursuant to the Mitchums Creek contract.

Certain Payments by Delaware Corporation

During the years in question, Delaware Corporation made certain payments as described below.

Caroline County Farm

During 1994, Delaware Corporation paid the following expenses (1994 Caroline County farm expenses) totaling $49,817 with respect to the Caroline County farm:

| Type of Expense | Amount |
|---|---|
| Mortgage Loan | $44,170 |
| Real Estate Taxes | 2,418 |
| Electric Utilities | 2,917 |
| Telephone | 312 |

Virginia Beach Property

During 1994, Delaware Corporation paid the following expenses (1994 Virginia Beach property expenses) totaling $29,202 with respect to the Virginia Beach property:

| Type of Expense | Amount |
|---|---|
| Mortgage Loan | $18,627 |
| Real Estate Taxes | 2,963 |
| Electric Utilities | 4,805 |
| Telephone | 1,682 |
| Television | 251 |
| Propane | 200 |
| Security | 482 |
| Miscellaneous | 192 |

During 1995, Delaware Corporation paid the following expenses (1995 Virginia Beach property expenses) totaling $23,654 with respect to the Virginia Beach property:

| Type of Expense | Amount |
|---|---|
| Mortgage Loan | $18,649 |
| Real Estate Taxes | 2,963 |
| Electric Utilities | 1,771 |
| Telephone | 271 |

Mitchums Creek Property

During 1994, pursuant to the Mitchums Creek contract, Delaware Corporation paid a total of $17,807 in legal fees (legal fees with respect to the Mitchums Creek property) for legal services provided to Mr. Barber in connection with the litigation with respect to the Mitchums Creek property.

Child Care

During 1994 and 1995, Delaware Corporation paid $7,762 (1994 child care expenses) and $3,321 (1995 child care expenses), respectively, for the care of the children of Mr. Barber's daughters. Delaware Corporation did not treat those payments as taxable fringe benefits.

Petitioners' Respective Federal Income Tax Returns

Each petitioner filed tax returns (returns) for the years in question as described below.

Delaware Corporation's Returns

Delaware Corporation filed Form 1120, U.S. Corporation Income Tax Return (Form 1120), for its taxable year 1994 (Delaware Corporation's 1994 return). Failes & Associates, P.C., was the paid preparer (preparer) of that return. In Delaware Corporation's 1994 return, Delaware Corporation claimed the following

deductions: (1) $49,817 for the 1994 Caroline County farm expenses, (2) $29,202 for the 1994 Virginia Beach property expenses, (3) $17,807 for the legal fees with respect to the Mitchums Creek property, (4) $7,762 for the 1994 child care expenses, and (5) $10,909 for depreciation with respect to the Virginia Beach property (1994 Virginia Beach property depreciation deduction). In Delaware Corporation's 1994 return, Delaware Corporation reported $7,200 as gross rent received with respect to the Virginia Beach property (1994 claimed rent of $7,200).

Delaware Corporation filed Form 1120 for its taxable year 1995 (Delaware Corporation's 1995 return).[7] In Delaware Corporation's 1995 return, Delaware Corporation claimed the following deductions: (1) $23,654 for the 1995 Virginia Beach property expenses, (2) $3,321 for the 1995 child care expenses, and (3) $5,454 for depreciation with respect to the Virginia Beach property (1995 Virginia Beach property depreciation deduction). In Delaware Corporation's 1995 return, Delaware Corporation claimed an NOL.[8] Delaware Corporation carried part of that NOL back to its taxable years 1993 and 1994 and, as discussed below,

---

[7]Delaware Corporation's 1995 return is not part of the record in this case. We are unable to determine from that record whether a preparer prepared Delaware Corporation's 1995 return and, if so, the identity of such preparer.

[8]The record does not disclose the amount of the NOL that Delaware Corporation claimed in Delaware Corporation's 1995 return.

carried the balance (i.e., $74,021) forward to its taxable year 1997.

Delaware Corporation filed Form 1120 for its taxable year 1997 (Delaware Corporation's 1997 return). Failes & Associates, P.C., was the preparer of that return. In Delaware Corporation's 1997 return, Delaware Corporation claimed an NOL deduction of $74,021 that was attributable to a claimed NOL carryforward from 1995.

Ms. Havens's Returns

Ms. Havens filed Form 1040, U.S. Individual Income Tax Return (Form 1040), for her taxable year 1994 (Ms. Havens's 1994 return). Braun, Dehnert, Clarke & Co., PC, was the preparer of that return. In Ms. Havens's 1994 return, Ms. Havens did not report as income the following payments that Delaware Corporation made during 1994: (1) $49,817 for the 1994 Caroline County farm expenses and (2) $29,202 for the 1994 Virginia Beach property expenses. In Ms. Havens's 1994 return, Ms. Havens did not report as income Delaware Corporation's assignment in 1994 of its interest in the Caroline County farm contract to MSG-STG L.P., a family limited partnership controlled by Ms. Havens.

Ms. Havens filed Form 1040 for her taxable year 1995 (Ms. Havens's 1995 return). "KROBOTHs" was the preparer of that return. In Ms. Havens's 1995 return, Ms. Havens did not report as income $23,654 for the 1995 Virginia Beach property expenses

that Delaware Corporation paid during 1995.  In Ms. Havens's 1995 return, Ms. Havens did not report as income Delaware Corporation's assignment of its interest in the Virginia Beach property contract to her.

### Mr. Barber's Returns

Mr. Barber filed Form 1040 for his taxable year 1994 (Mr. Barber's 1994 return).  A preparer prepared that return.[9]  In Mr. Barber's 1994 return, Mr. Barber did not report as income the following payments that Delaware Corporation made during 1994: (1) $17,807 for legal fees with respect to the Mitchums Creek property and (2) $7,762 for the 1994 child care expenses.

Mr. Barber filed Form 1040 for his taxable year 1995 (Mr. Barber's 1995 return).  Failes & Associates, P.C., was the preparer of that return.  In Mr. Barber's 1995 return, Mr. Barber did not report as income $3,321 for the 1995 child care expenses that Delaware Corporation paid during 1995.

## Respondent's Examination of Petitioners' Respective Returns

Respondent's examination of petitioners' respective returns for the taxable years in question began prior to July 23, 1998.

### Delaware Corporation's Notice of Deficiency

Respondent issued a notice to Delaware Corporation (Delaware Corporation's notice) with respect to its taxable years 1994 and

---

[9]The record does not disclose the identity of the preparer of Mr. Barber's 1994 return.

1997. In that notice, respondent determined, inter alia, to disallow the following deductions claimed in Delaware Corporation's 1994 return: (1) Real estate taxes of $2,418 attributable to the Caroline County farm, (2) real estate taxes of $2,963 attributable to the Virginia Beach property, (3) mortgage loan interest of $29,820 attributable to the Caroline County farm, (4) mortgage loan interest of $6,350 attributable to the Virginia Beach property,[10] (5) utility expenses of $8,847,[11] (6) legal fees of $17,807 attributable to the litigation with respect to the

---

[10]The parties stipulated that Delaware Corporation made for 1994, and deducted in its 1994 return, $44,170 of mortgage loan payments with respect to the Caroline County farm and $18,627 of mortgage loan payments with respect to the Virginia Beach property. Delaware Corporation's notice showed that for the taxable year 1994 respondent disallowed $29,820 of mortgage loan interest deductions with respect to the Caroline County farm and $6,350 of mortgage loan interest deductions with respect to the Virginia Beach property. The record does not disclose the reason for the discrepancies between the respective total amounts of mortgage loan payments that the parties stipulated Delaware Corporation made during 1994, and deducted in Delaware Corporation's 1994 return, with respect to the Caroline County farm and the Virginia Beach property (i.e., $44,170 and $18,627, respectively) and the respective total amounts of mortgage loan interest deductions that respondent disallowed for that year with respect to those properties (i.e., $29,820 and $6,350, respectively).

[11]In Delaware Corporation's notice, respondent did not show the disallowed portion of the total expense deductions of $8,847 for utilities that Delaware Corporation claimed in its 1994 return (1) that was attributable to the Caroline County farm and (2) that was attributable to the Virginia Beach property. The record establishes that Delaware Corporation paid during 1994 utility expenses of $2,917 attributable to the Caroline County farm and $5,930 attributable to the Virginia Beach property.

Mitchums Creek property, (7) telephone expenses of $2,700,[12] (8) child care expenses of $7,762, and (9) depreciation of $10,909 attributable to the Virginia Beach property. In Delaware Corporation's notice, respondent also determined that the 1994 claimed rent of $7,200 should not be included in Delaware Corporation's gross income for 1994.

In Delaware Corporation's notice, respondent determined, inter alia, to disallow the following deductions claimed in Delaware Corporation's 1995 return: (1) Real estate taxes of $2,963 attributable to the Virginia Beach property, (2) mortgage loan interest of $11,676 attributable to the Virginia Beach property,[13] (3) utility expenses of $1,777 attributable to the

---

[12]In Delaware Corporation's notice, respondent did not show the disallowed portion of the total telephone expense deductions of $2,700 that Delaware Corporation claimed in its 1994 return (1) that was attributable to the Caroline County farm and (2) that was attributable to the Virginia Beach property. The record establishes that Delaware Corporation paid during 1994 telephone expenses of $312 attributable to the Caroline County farm and $1,682 attributable to the Virginia Beach property. Although the record is not clear regarding the property or properties to which the remaining expenses of $706 are attributable, the parties do not dispute that for 1994 the total telephone expense deductions in dispute are $2,700.

[13]The parties stipulated that Delaware Corporation made for 1995, and deducted in its 1995 return, $18,649 of mortgage loan payments with respect to the Virginia Beach property. Delaware Corporation's notice showed that for the taxable year 1995 respondent disallowed $11,676 of mortgage loan interest deductions with respect to that property. The record does not disclose the reason for the discrepancies between the total amount of mortgage loan payments that the parties stipulated Delaware Corporation made during 1995, and deducted in Delaware Corpora-
(continued...)

Virginia Beach property, (4) telephone expenses of $271 attributable to the Virginia Beach property, (5) child care expenses of $3,321, and (6) depreciation of $5,454 attributable to the Virginia Beach property.

As a result of the disallowance of the foregoing deductions, respondent determined: (1) To decrease (a) the amount of the NOL that Delaware Corporation claimed in Delaware Corporation's 1995 return and (b) the amount of the NOL carryback from 1995 that Delaware Corporation claimed in its 1993 return and 1994 return and (2) to eliminate the NOL carryforward from 1995 that Delaware Corporation claimed in its 1997 return. In Delaware Corporation's notice, respondent further determined that Delaware Corporation is liable for each of the years 1994 and 1997 for the accuracy-related penalty under section 6662(a).

Ms. Havens's Notice of Deficiency

Respondent issued a notice to Ms. Havens with respect to her taxable years 1994 and 1995. In that notice, respondent determined that during 1994 Ms. Havens received constructive dividends of $79,019 from Delaware Corporation, of which (1) $49,817 was attributable to the 1994 Caroline County farm expenses that Delaware Corporation paid during 1994 and (2) $29,202 was attrib-

---

[13](...continued)
tion's 1995 return, with respect to the Virginia Beach property (i.e., $18,649) and the total amount of mortgage loan interest deductions that respondent disallowed for that year with respect to the Virginia Beach property (i.e., $11,676).

utable to the 1994 Virginia Beach property expenses that Delaware Corporation paid during that year. In Ms. Havens's notice, respondent also determined that during 1995 Ms. Havens received constructive dividends of $23,654 from Delaware Corporation attributable to the 1995 Virginia Beach property expenses that Delaware Corporation paid during that year. Respondent further determined in Ms. Havens's notice that she is liable for each of the years 1994 and 1995 for the accuracy-related penalty under section 6662(a).

Mr. Barber's Notice of Deficiency

Respondent issued a notice to Mr. Barber (Mr. Barber's notice) with respect to his taxable years 1994 and 1995. In that notice, respondent determined that during 1994 Mr. Barber received constructive dividends of $25,569 from Delaware Corporation, of which (1) $17,807 was attributable to the legal fees with respect to the Mitchums Creek property that Delaware Corporation paid during 1994 and (2) $7,762 was attributable to the 1994 child care expenses that Delaware Corporation paid during that year. In Mr. Barber's notice, respondent also determined that during 1995 Mr. Barber received constructive dividends of $3,321 from Delaware Corporation attributable to the 1995 child care expenses that Delaware Corporation paid during that year. Respondent further determined in Mr. Barber's notice that he is liable for each of the years 1994 and 1995 for the accuracy-

related penalty under section 6662(a).

OPINION

Each petitioner bears the burden of proving that respondent's determinations in the notice that respondent issued to such petitioner is erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

We must determine whether: (1) Delaware Corporation's payments during 1994 of the 1994 Caroline County farm expenses and the 1994 Virginia Beach property expenses and during 1995 of the 1995 Virginia Beach property expenses (collectively, the disputed property expenses) constitute constructive dividends to Ms. Havens for those respective years that Delaware Corporation is not entitled to deduct; (2) Delaware Corporation is entitled for 1994 to the 1994 Virginia Beach property depreciation deduction and for 1995 to the 1995 Virginia Beach property depreciation deduction (collectively, the Virginia Beach property depreciation deductions); (3) Delaware Corporation's payments during 1994 of the legal fees with respect to the Mitchums Creek property constitute constructive dividends to Mr. Barber for that year that Delaware Corporation is not entitled to deduct; (4) Delaware Corporation's payments during 1994 of the 1994 child care expenses and during 1995 of the 1995 child care expenses (collectively, the disputed child care expenses) constitute constructive dividends to Mr. Barber for those respective years

that Delaware Corporation is not entitled to deduct; and

(5) petitioners are liable for the respective years at issue for the accuracy-related penalties.

It is petitioners' position that respondent erred in determining: (1) That Delaware Corporation's payments of (a) the disputed property expenses, (b) the legal fees with respect to the Mitchums Creek property, and (c) the disputed child care expenses constitute constructive dividends to Ms. Havens or Mr. Barber, as the case may be, that Delaware Corporation is not entitled to deduct;[14] (2) that Delaware Corporation is not entitled to the Virginia Beach property depreciation deductions; and (3) that petitioners are liable for the accuracy-related penalties at issue. In support of their position, petitioners rely on, inter alia, Mr. Barber's testimony. We found his testimony to be questionable, vague, general, conclusory, and/or uncorroborated in certain material respects. We shall not rely on any

---

[14]Petitioners do not argue that Ms. Havens and Mr. Barber did not receive constructive dividends during the years at issue because of insufficient earnings and profits of Delaware Corporation. See secs. 301(c)(1), 316(a). Nor do petitioners contend that Delaware Corporation intended (1) the payments of the disputed property expenses to be compensation to Ms. Havens, and (2) the payments of the legal fees with respect to the Mitchums Creek property and the disputed child care expenses to be compensation to Mr. Barber that is deductible by it for the respective years in question. See Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058-1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973).

such testimony to support petitioners' position in the instant cases.

Petitioners did not call Ms. Havens to testify in support of their position in these cases. We presume that Ms. Havens did not testify because her testimony would not have been favorable to petitioners' position. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

1994 Caroline County Farm Expenses, 1994 Virginia Beach
<u>Property Expenses, and 1995 Virginia Beach Property Expenses</u>

In support of their position with respect to the disputed property expenses, petitioners argue:

> Because the Caroline County Farm was investment prop-
> erty held for rent and for resale, DC [Delaware Corpo-
> ration] may deduct real estate taxes, mortgage interest
> and utilities and operating expenses paid by it. * * *
>
> * * * DC can deduct mortgage interest paid on the
> Virginia Beach property in 1994 and 1995 and mortgage
> interest paid on the Caroline County farm in 1995,
> because the Virginia Beach property was rental prop-
> erty. Both pieces were investment property held for
> rent and resale. * * *
>
>     *     *     *     *     *     *     *
>
>     Assets sold to DC were Caroline County farm,
> $715,000; Virginia Beach property $300,000; Marion-
> Booker spec house [Chick Cove property], $99,000;
> Mitchum's [sic] Creek property $75,000 and 60% interest
> in MSA-Kuwait, total in excess of $1,000,000. This
> infusion of capital enabled DC to get back into the
> construction business and make a profit.
>
>     * * * All these transactions had substantial
> economic, commercial and legal effects other then
> expected tax benefits. They were in no way an economic

sham without effect for Federal income tax purposes.
* * *

Respondent counters:

A fundamental principle of income tax law is that
economic substance prevails over form, and in this case
the real estate transactions between petitioners were
without economic substance because petitioner Havens
remained the true owner of the equity in the proper-
ties. * * *

    *        *        *        *        *        *        *

It is abundantly clear that the real estate transac-
tions between Havens and Delaware Corporation are
without economic substance.  Havens always remained in
possession of the properties and controlled the proper-
ties as she had done before the transfers.  Once the
Court looks through the alleged transfer to Delaware
Corporation, no economic relationships were altered,
and Havens remained the owner of the Virginia Beach and
Caroline County properties.

On the record before us, we reject petitioners' argument
that as of August 1, 1993, or any time thereafter during the
years in question, Ms. Havens transferred the Caroline County
farm and the Virginia Beach property to Delaware Corporation and
that Delaware Corporation became the owner of those properties.
On that record, we agree with respondent that during the years in
question Ms. Havens remained the owner of both of those proper-
ties.

In determining whether the benefits and burdens of ownership
of the Caroline County farm and of the Virginia Beach property
passed from Ms. Havens to Delaware Corporation, we look to <u>Keith
v. Commissioner</u>, 115 T.C. 605 (2000), for guidance.  In <u>Keith v.</u>

Commissioner, supra at 611-612, we stated:

> Case law * * * sets forth the standard for deter-
> mining when a sale is complete for tax purposes.  With
> respect to real property, a sale and transfer of owner-
> ship is complete upon the earlier of the passage of
> legal title or the practical assumption of the benefits
> and burdens of ownership.  See Major Realty Corp. &
> Subs. v. Commissioner, 749 F.2d 1483, 1486 (11th Cir.
> 1985), affg. in part and revg. in part T.C. Memo. 1981-
> 361; Dettmers v. Commissioner, 430 F.2d 1019, 1023 (6th
> Cir. 1970), affg. Estate of Johnston v. Commissioner,
> 51 T.C. 290 (1968); Baird v. Commissioner, 68 T.C. 115,
> 124 (1977).  This test reaffirms the longstanding
> principle, evidenced by the following early statement,
> that transfer of legal title is not a prerequisite for
> a completed sale:  "A closed transaction for tax pur-
> poses results from a contract of sale which is absolute
> and unconditional on the part of the seller to deliver
> to the buyer a deed upon payment of the consideration
> and by which the purchaser secures immediate possession
> and exercises all the rights of ownership."  Commis-
> sioner v. Union Pac. R.R. Co., 86 F.2d 637, 639 (2d
> Cir. 1936), affg. 32 B.T.A. 383 (1935).
>
> In determining whether passage either of title or
> of benefits and burdens has occurred, we look to State
> law.  It is State law that creates, and governs the
> nature of, interests in property, with Federal law then
> controlling the manner in which such interests are
> taxed.  See United States v. National Bank of Commerce,
> 472 U.S. 713, 722 (1985).  Here, execution of the
> contracts for deed was not accompanied by a transfer of
> legal title, so we must decide whether these instru-
> ments were sufficient under State law to confer upon
> the purchaser the benefits and burdens of ownership.
> This inquiry is a practical one to be resolved by
> examining all of the surrounding facts and circum-
> stances. * * *
>
> Among the factors which this and other courts have
> cited as indicative of the benefits and burdens of
> ownership are:  A right to possession; an obligation to
> pay taxes, assessments, and charges against the prop-
> erty; a responsibility for insuring the property; a
> duty to maintain the property; a right to improve the
> property without the seller's consent; a bearing of the
> risk of loss; and a right to obtain legal title at any

time by paying the balance of the full purchase price. See <u>Goldberg v. Commissioner</u>, T.C. Memo. 1997-74; see also <u>Major Realty Corp. v. Commissioner</u>, <u>supra</u> at 1487; <u>Grodt & McKay Realty, Inc. v. Commissioner</u>, 77 T.C. 1221, 1237-1238 (1981); <u>Musgrave v. Commissioner</u>, T.C. Memo. 2000-285; <u>Berger v. Commissioner</u>, T.C. Memo. 1996-76; <u>Spyglass Partners v. Commissioner</u>, T.C. Memo. 1995-452. When a buyer, by virtue of such incidents, would be considered to have obtained equitable owner-ship under State law, a sale will generally be deemed completed for Federal tax purposes. * * *

As required by <u>Keith v. Commissioner</u>, <u>supra</u>, we shall examine the law of the Commonwealth of Virginia (Virginia law)[15] to determine whether as of August 1, 1993, or any time thereafter during the years in question, the Caroline County farm contract and the Virginia Beach contract conferred on Delaware Corporation the benefits and burdens of ownership (i.e., equitable ownership) of the Caroline County farm and the Virginia Beach property.

Under Virginia law, generally when a contract for the sale and purchase of real property is executed, the equitable owner-ship (i.e., the benefits and burdens of ownership) of the real property is transferred from the seller to the buyer. See <u>Lipps v. First Am. Serv. Corp.</u>, 286 S.E.2d 215, 220 (Va. 1982); <u>Sale v. Swann</u>, 120 S.E. 870, 873 (Va. 1924). Where a contract for the sale and purchase of real property contains a condition prece-dent, that condition must be satisfied before a party to such contract may seek specific performance of such contract, see

---

[15]The Caroline County contract and the Virginia Beach con-tract provided that Virginia law was to govern the interpretation of those respective contracts.

Flippo v. F & L Land Co., 400 S.E.2d 156, 160 (Va. 1991), and before the equitable ownership (i.e., the benefits and burdens of ownership) of such real property will pass from the seller to the buyer, see Bauserman v. Digiulian, 297 S.E.2d 671 (Va. 1982). Virginia law thus is consistent with tax law which requires that a contract of sale of real property be "absolute and unconditional" in order for such contract to be considered a closed transaction for tax purposes. Commissioner v. Union Pac. R.R., 86 F.2d 637, 639 (2d Cir. 1936), affg. 32 B.T.A. 383 (1935).

In the instant cases, both the Caroline County farm contract and the Virginia Beach property contract contained conditions precedent that had to be satisfied. Delaware Corporation had no obligation to make any payments of principal to Ms. Havens with respect to the Caroline County farm note, which under the Caroline County farm contract was part of the purchase price, unless and until the Caroline County farm was sold.[16] Similarly, Delaware Corporation had no obligation to make any payments of principal to Ms. Havens with respect to the Virginia Beach property note, which under the Virginia Beach property contract was part of the purchase price, unless and until the Virginia

---

[16]Ms. Havens had no obligation under the Caroline County farm contract to deliver a deed for the Caroline County farm unless and until Delaware Corporation paid the Caroline County farm note in full.

Beach property was sold.[17]  At all relevant times after July 31, 1993, the Caroline County farm and the Virginia Beach property remained unsold, and Delaware Corporation did not make any payments to Ms. Havens on the Caroline County farm note or the Virginia Beach property note.[18]

In addition, the Caroline County farm contract and the Virginia Beach contract contained other provisions which indicate that Ms. Havens did not transfer to Delaware Corporation as of August 1, 1993, or any time thereafter during the years in question, the respective benefits and burdens of ownership of the Caroline County farm and of the Virginia Beach property.  Pursuant to those respective contracts, Delaware Corporation was not permitted to (1) make any improvements to the respective properties without first obtaining Ms. Havens's written approval or (2) mortgage such respective properties to pay the Caroline County farm note and the Virginia Beach property note, respectively, without the consent of Ms. Havens.

Another factor indicating that Ms. Havens did not transfer

---

[17]Ms. Havens had no obligation under the Virginia Beach property contract to deliver a deed for the Virginia Beach property unless and until Delaware Corporation paid the Virginia Beach property note in full.

[18]The Caroline County farm contract and the Virginia Beach property contract did not specify any dates by which the Caroline County farm and the Virginia Beach property, respectively, were to be sold.  As a result, the respective maturity dates for the Caroline County farm note and the Virginia Beach property note were open-ended.

to Delaware Corporation as of August 1, 1993, or any time thereafter during the years in question, the benefits and burdens of ownership of the Virginia Beach property is that Ms. Havens continued to reside at that property during those years without paying any rent.[19]

It is also significant that at all relevant times, including the respective effective dates of the Caroline County farm contract and the Virginia Beach property contract and all relevant times thereafter during the taxable years in question, petitioners did not intend that Ms. Havens transfer to Delaware Corporation equitable ownership of and legal title to the Caroline County farm and the Virginia Beach property. Indeed,

---

[19]Petitioners contend that during 1994 Ms. Havens and Mr. Barber each paid $3,600 to Delaware Corporation for the rental of the Virginia Beach property, or a total of $7,200, which they concede did not equal the annual fair rental value of that property. In support of that contention, petitioners rely on Mr. Barber's testimony. We found such testimony to be questionable, vague, and uncorroborated, and we shall not rely on it to establish that Mr. Barber paid any amount to Delaware Corporation in 1994 as rent for his use of the Virginia Beach property. Moreover, Mr. Barber's testimony on which petitioners rely does not address whether Ms. Havens paid any rent to Delaware Corporation in 1994 for her use of that property. Petitioners have not presented any evidence, and make no argument, that during the years in question Delaware Corporation received any rent for the Caroline County farm. On the record before us, we find that petitioners have failed to establish that Ms. Havens and Mr. Barber (1) paid during 1994 a total of $7,200 as rent for the Virginia Beach property and (2) paid during the years in question any rent for the Caroline County farm and the Virginia Beach property. On that record, we further find that petitioners have failed to carry their burden of establishing that during the years in question the Caroline County farm and the Virginia Beach property were rental properties that Delaware Corporation owned.

Mr. Braun advised them to treat the Caroline County farm contract and the Virginia Beach property contract as stockholder loans in Delaware Corporation's financial statements.

In addition, both the Caroline County farm assignment and the Virginia Beach property assignment, which assigned Delaware Corporation's respective interests in the Caroline County farm contract and the Virginia Beach property contract to a family limited partnership (i.e., MSG-STG L.P.) controlled by Ms. Havens and to Ms. Havens, respectively, contained acknowledgments that Ms. Havens continued to own the Caroline County farm and the Virginia Beach property as of the effective dates of those assignments.  Those assignments stated in pertinent part:

> **WHEREAS**, the parties wish the Assignment to allow Frances B. **Havens** to freely transfer and/or convey or sell her ownership in the * * * [Caroline County Farm or the Virginia Beach property] free and clear of any claims of interest or ownership by **DELAWARE CORPORATION** under the August 1, 1993 contract of purchase.  [Emphasis added.]

On the record before us, we find that petitioners have failed to carry their burden of establishing that the Caroline County farm contract and the Virginia Beach property contract conferred on Delaware Corporation as of August 1, 1993, or any time thereafter during the years in question, the respective benefits and burdens of ownership (i.e., equitable ownership) of the Caroline County farm and the Virginia Beach property.

With respect to Delaware Corporation's payments of the

respective disputed property expenses relating to the Caroline County farm and the Virginia Beach property that we have found Delaware Corporation did not own during the years in question, it is well established that when a corporation confers an economic benefit on a stockholder in his or her capacity as such, without an expectation of reimbursement, that benefit constitutes a constructive dividend to the stockholder.  E.g., Hagaman v. Commissioner, 958 F.2d 684, 690 (6th Cir. 1992), affg. in part and remanding in part on another ground T.C. Memo. 1987-549; Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980).  The existence of a constructive dividend is a question of fact.  Hagaman v. Commissioner, supra; Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1215 (5th Cir. 1978).  Generally, a corporation may not claim a deduction in computing its taxable income for a payment that constitutes a constructive dividend to its stockholder.  See Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 392-393 (1983); Va. Natl. Bank v. United States, 450 F.2d 1155, 1157-1158 (4th Cir. 1971); Berkley Mach. Works & Foundry, Inc. v. Commissioner, 422 F.2d 362 (4th Cir. 1970), affg. per curiam T.C. Memo. 1968-278.

On the record before us, we find that petitioners have failed to carry their burden of establishing that during 1994 and 1995 Ms. Havens intended to reimburse Delaware Corporation for its payments of the respective disputed property expenses with

respect to the Caroline County farm and the Virginia Beach property that we have found she owned during the years in question. On that record, we further find that petitioners have failed to carry their burden of establishing that during 1994 and 1995 Delaware Corporation's payments of such expenses did not confer an economic benefit on Ms. Havens.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing (1) that Delaware Corporation's payments during 1994 and 1995, respectively, of the disputed property expenses do not constitute constructive dividends to Ms. Havens for those years and (2) that Delaware Corporation is entitled to deduct such expenses for those years. Based upon that examination, we further find that petitioners have failed to carry their burden of establishing that Delaware Corporation is entitled for 1994 to the 1994 Virginia Beach property depreciation deduction and for 1995 to the 1995 Virginia Beach property depreciation deduction. See sec. 167(a).

Legal Fees With Respect to the Mitchums Creek Property

In support of their position with respect to the legal fees with respect to the Mitchums Creek property, petitioners argue:

> The payment of the legal fee by Delaware did not result in a constructive dividend to Barber because he had already contracted with Delaware that it would pay all expenses in recovering the house as part of the consideration for the purchase. * * *

*       *       *       *       *       *       *

The legal fee was clearly incurred and paid for by Delaware, which had purchased the property from Barber. The suit was filed to protect Delaware's $50,000 investment in the property.

Respondent counters:

the payment of * * * legal fees associated with Barber's suit against his ex-wife involving their marital residence constitute[s] constructive dividends to Barber and petitioners have not argued that the payments constituted compensation to him, deductible by Delaware Corporation on that basis. * * *

*       *       *       *       *       *       *

* * * In this case, petitioner Barber brought suit against his ex-wife because she defrauded him out of their marital residence and he sought rent from his ex-wife as part of the equitable distribution of marital property. * * * But for the divorce, Barber would not have had to bring suit against his ex-wife.  Moreover, Barber brought suit against his ex-wife in his own name and he, not Delaware Corporation was awarded the property at the conclusion of the litigation. * * * Whatever business justifications petitioners put forward are simply not sufficient substance to alter the conclusion that the payment was primarily for Barber's benefit and a constructive dividend [is] warranted.

On the record before us, we reject petitioners' argument that during 1994 Delaware Corporation's payments of the legal fees with respect to the Mitchums Creek property do not constitute constructive dividends to Mr. Barber for that year and that Delaware Corporation is entitled to deduct such legal fees for that year.  On that record, we agree with respondent that during 1994 such payments constitute constructive dividends to Mr.

Barber for that year that Delaware Corporation is not entitled to deduct.

Ms. Barber recorded the Mitchums Creek deed and Mr. Barber commenced litigation against her in the Middlesex Circuit Court before he entered into the 1993 global agreement and the Mitchums Creek contract with Delaware Corporation. Mr. Barber commenced that litigation against Ms. Barber in order to assert his interest in the Mitchums Creek property, and not to protect any interest Delaware Corporation might have had in that property. Moreover, the Middlesex Circuit Court did not award any interest in the Mitchums Creek property to Delaware Corporation. Instead, that court ordered a rescission of the deed conveying Mr. Barber's interest in that property to Ms. Barber and a so-called equitable distribution of the Mitchums Creek property to both Mr. Barber and Ms. Barber.

On the record before us, we find that petitioners have failed to carry their burden of establishing that the legal fees that Mr. Barber incurred in connection with the litigation with respect to the Mitchums Creek property did not become his obligation to pay as the relevant legal services were rendered. On that record, we further find that petitioners have failed to carry their burden of establishing that during 1994 Mr. Barber intended to reimburse Delaware Corporation for its payments of the legal fees with respect to the Mitchums Creek property. On

the record before us, we find that petitioners have failed to carry their burden of establishing that during 1994 Delaware Corporation's payments of those legal fees did not confer an economic benefit on Mr. Barber.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing (1) that Delaware Corporation's payments during 1994 of the legal fees with respect to the Mitchums Creek property do not constitute constructive dividends to Mr. Barber for that year and (2) that Delaware Corporation is entitled to deduct such legal fees for that year.[20]

1994 Child Care Expenses and 1995 Child Care Expenses

In support of their position with respect to the disputed child care expenses, petitioners argue:

Payment of childcare expenses for employees is a deductible expense.

    *        *        *        *        *        *        *

    * * * Barber received neither benefit nor income

_____

[20]Although not altogether clear, petitioners may also be arguing that Delaware Corporation's payments of the legal fees with respect to the Mitchums Creek property do not constitute constructive dividends to Mr. Barber because such payments were part of the "consideration for the purchase" of the Mitchums Creek property.  Any such argument not only ignores that a corporation's conferring an economic benefit on a stockholder is a constructive dividend to that stockholder, see, e.g., Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980), it also is inconsistent with petitioners' position that Delaware Corporation is entitled to deduct its payments of the legal fees with respect to the Mitchums Creek property.

- 51 -

> from DC's payment of childcare for its employees in
> 1994 and 1995.  Just because the employee [sic] hap-
> pened to be Barber's daughters, doesn't impute receipt
> of income to Barber.  If there is any imputed income,
> it is to the employee [sic], the daughters, not to
> Barber.

Respondent counters:

> the payment of child care expenses for Barber's grand-
> children * * * constitute constructive dividends to
> Barber and petitioners have not argued that the pay-
> ments constituted compensation to him, deductible by
> Delaware Corporation on that basis. * * * The payment
> of Barber's grandchildren's child care expenses was
> inherently personal and primarily benefited petitioner
> Barber and not Delaware Corporation. * * *

On the record before us, we reject petitioners' argument
that Delaware Corporation's payments during 1994 and 1995,
respectively, of the disputed child care expenses do not consti-
tute constructive dividends to Mr. Barber for those years and
that Delaware Corporation is entitled to deduct such expenses for
those years.  On that record, we agree with respondent that
Delaware Corporation's payments during 1994 and 1995, respec-
tively, of the disputed child care expenses constitute construc-
tive dividends to Mr. Barber for those years that Delaware
Corporation is not entitled to deduct.

Payments by a corporation for the benefit of relatives of a
stockholder may constitute constructive dividends to such stock-
holder when made at the direction of, or to satisfy the personal

wishes of, such stockholder.[21]  On the record before us, we find that petitioners have failed to carry their burden of establishing that Delaware Corporation's payments during 1994 and 1995, respectively, of the disputed child care expenses were not made at the direction of, or to satisfy the personal wishes of, Mr. Barber.  On that record, we further find that petitioners have failed to carry their burden of establishing that during 1994 and 1995, respectively, Mr. Barber intended to reimburse Delaware Corporation for its payments of the disputed child care expenses. On the record before us, we find that petitioners have failed to carry their burden of establishing that Delaware Corporation's payments during 1994 and 1995, respectively, of the disputed child care expenses did not confer an economic benefit on Mr. Barber for those years.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing (1) that Delaware Corporation's payments during 1994 and 1995, respectively, of the disputed child care expenses do not constitute constructive dividends to Mr. Barber for those years and (2) that Delaware Corporation is entitled to deduct such expenses for those years.

---

[21]See, e.g., Hufnagle v. Commissioner, T.C. Memo. 1986-119; Bongiovanni v. Commissioner, T.C. Memo. 1976-131.

Accuracy-Related Penalties

Respondent determined that Delaware Corporation is liable for each of the years 1994 and 1997, that Ms. Havens is liable for each of the years 1994 and 1995, and that Mr. Barber is liable for each of the years 1994 and 1995 for the accuracy-related penalty under section 6662(a) because of:  (1) Negligence under section 6662(b)(1) or (2) a substantial understatement of income tax under section 6662(b)(2).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax resulting from, inter alia, negligence or disregard of rules or regulations, sec. 6662(b)(1), or a substantial understatement of income tax, sec. 6662(b)(2). For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence has also been defined as a lack of care or failure to do what a reasonable person would do under the circumstances.  Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990).  An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the tax return, sec. 6662(d)(2)(A), and is substantial (1) in the case of an individ-

ual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000, sec. 6662(d)(1)(A), and (2) in the case of a corporation if it exceeds the greater of 10 percent of the tax required to be shown or $10,000, sec. 6662(d)(1)(B).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional, such as an accountant, does not necessarily demonstrate reasonable cause and good faith, unless, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id. In the case of claimed reliance on the accountant who prepared the taxpayer's tax return, the taxpayer must establish that correct information was provided to the accountant and that the item incorrectly omitted, claimed, or reported in the return was the result of the accountant's error. Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995), affg. T.C. Memo. 1993-634; Weis v. Commissioner, 94

T.C. 473, 487 (1990); <u>Ma-Tran Corp. v. Commissioner</u>, 70 T.C. 158, 173 (1978).

Although not entirely clear, it appears that petitioners are arguing that they are not liable for the accuracy-related penalties at issue because they sought and received tax advice from professionals and relied upon such advice in ascertaining the tax treatment of the disputed property expenses, the Virginia Beach property depreciation deductions, the legal fees with respect to the Mitchums Creek property, and the disputed child care expenses that was reflected in their respective tax returns.

The record establishes that a preparer prepared each of the following tax returns: Delaware Corporation's 1994 return, Delaware Corporation's 1997 return, Ms. Havens's 1994 return, Ms. Havens's 1995 return, Mr. Barber's 1994 return, and Mr. Barber's 1995 return (collectively, returns in question). The only professional on whom petitioners claim to have relied and who testified at the trial in these cases was Mr. Braun. No other professional, including the preparers of the respective returns in question, testified at trial.

The following colloquy took place on direct examination of Mr. Braun:

> Q    What about the tax aspects of the deductions that the Delaware Corporation could take or would take as a result of acquiring these properties where they assumed debt [i.e., the Caroline County farm and the Virginia Beach property]?

A    These properties were basically rental properties.  As long as the rent was paid, I felt that they were valid rental properties.

Q    Could the corporation therefore deduct operating expenses?

A    That's correct.

Q    Of the rental properties?

A    Yes, sir.

Mr. Braun's characterization in his testimony of the Caroline County farm and the Virginia Beach property as "basically rental properties" must have been based on information provided to him.  We presume that petitioners provided such information to Mr. Braun.  We have found that petitioners have failed to carry their burden of establishing that during the years in question the Caroline County farm and the Virginia Beach property were rental properties that Delaware Corporation owned.  See supra note 19.  On the record before us, we find that petitioners have failed to carry their burden of establishing that they were correct in informing Mr. Braun that during the years at issue the Caroline County farm and the Virginia Beach property were rental properties that Delaware Corporation owned.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they supplied correct information to Mr. Braun and to the respective preparers of the returns in question and that the errors in each of those returns were the results of errors on the part of Mr. Braun and

any of such preparers. <u>Westbrook v. Commissioner</u>, <u>supra</u>; <u>Weis v. Commissioner</u>, <u>supra</u>; <u>Ma-Tran Corp. v. Commissioner</u>, <u>supra</u>. On that record, we further find that petitioners have failed to carry their burden of establishing that they had reasonable cause for, and that they acted in good faith with respect to, relying on any advice of Mr. Braun, or any other professional, regarding the disputed property expenses, the Virginia Beach property depreciation deductions, the legal fees with respect to the Mitchums Creek property, and the disputed child care expenses. See sec. 6664(c)(1).

Based upon our examination of the entire record before us, we find that each petitioner has failed to show that such petitioner was not negligent and did not disregard rules or regulations within the meaning of section 6662(b)(1), or otherwise did what a reasonable person would do, with respect to any portion of the underpayment for any of the years at issue. Based on that examination, we further find that each petitioner has failed to show that such petitioner acted with reasonable cause and in good faith with respect to any portion of the underpayment for any of the years at issue. See sec. 6664(c). Based upon our examination of the entire record before us, we find that each petitioner has failed to establish that such petitioner is not liable for the years at issue for the accuracy-related penalties under

section 6662(a).[22]

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of Delaware Corporation,

<u>Decisions will be entered</u>

<u>for respondent</u>.

---

[22]We have found that petitioners are liable for the years at issue for the accuracy-related penalties at issue because of negligence or disregard of rules or regulations under sec. 6662(b)(1).  In light of that finding, we shall not address respondent's alternative argument that petitioners are liable for the years at issue for those accuracy-related penalties because of substantial understatements of income tax under sec. 6662(b)(2).